# EXHIBIT A

Commercial Lease dated June 1, 2023

with First Addendum and Second Addendum

Bricker v. Epstein and Lake Front Associates LLC

No. 3:26-cv-01125-DRL-SJF (N.D. Ind.)

LaPorte Superior Court 4
Filed: 4/24/2024 11:15 AM
Clerk
LaPorte County, Indiana

46D04-2404-EV-000564

# LEASE AGREEMENT

**THIS LEASE,** dated June 1, 2023 , is made by and between,, ___Lakefront Associates whose address is 3609 East U.S. Highway 12 "Landlord") and ___John Bricker whose address is 310 West Buffalo St. New Buffalo, Michigan 49117 (Referred as "Tenant").

## WITNESSETH:

That, for and in consideration of the rent to be paid by Tenant and the covenants and agreements to be performed by Landlord and Tenant, as hereinafter set forth, the parties mutually covenant and agree as follows:

1. **DEMISED PROPERTY.** Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, the real property located at _210 Freyer Rd. Michigan City, Indiana 46360__ consisting primarily of 2718 square feet, together with all appurtenances belonging to or in any way pertaining thereto; the said real property, improvements and appurtenances, are hereinafter referred to and called, collectively the "Premises"

2. **TERM.** This agreement is entered into by and between Landlord and the above stated Tenant. Said space is to be occupied and used for the purposes specified herein beginning on or before the 1st day of June 2023, and continuing until June 1, 2024 thereafter month to month until terminated or revised pursuant to the rental agreement.

3. **MONTH-TO-MONTH RENTAL AGREEMANT.**

(a) Following the initial rental term of this lease agreement the Tenant shall pay to Landlord, rent (hereinafter "rent"") of Seven Hundred Dollars **($700.00)**, The monthly installment shall be due the first (1st) day of each month beginning November 1, 2023 and continue until termination of said lease.

(b) Payment of Rent. All rent shall be paid on the first (1st) day of each calendar month without notice, demand, deduction or offset. Tenant shall prepay the first five months rental in advance in an amount of Three Thousand Five Hundred , (3,500.00) for the period June 1, 2023 till November 1, 2023 after which said rental shall be $700.00 per month.

4. USE. Tenant shall use the Premises for the purpose of operating a storage and distribution facility of non perishable items. and shall not use or permit the Premises to be used for any other purpose without the prior written consent of Landlord. Tenant shall not do or permit anything to be done in or about the Premises or keep anything therein which will in any way increase the existing premium for or affect or cause cancellation of any fire or other insurance policy upon the Premises or any part thereof or any of its contents. Tenant shall not use or allow the premises to be used for any improper, immoral, unlawful or objectionable purpose, nor shall Tenant cause, maintain or permit any nuisance in, on or about the Premises. Tenant shall not commit or suffer to be committed any waste in or upon the Premises.

5. COMPLIANCE WITH LAW. Tenant shall not use or permit anything to be done in or about the Premises which will in any way conflict with any law, statute, ordinance or governmental rule, regulation or requirement now in force or which may hereafter be enacted or promulgated. Tenant shall, at its sole cost and expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force, and with the requirements of any board of fire insurance underwriters or other similar bodies now or hereafter constituted relating to, or affecting the condition, use or occupancy of the Premises, excluding structural changes not related to or affected by Tenant's improvements or acts.

6. ALTERATIONS AND ADDITIONS. Tenant shall make no other alteration or addition to the Premises without Landlord's prior written consent, which consent shall not be unreasonably withheld. In the event such consent is applied for and given, all alterations or additions to the Premises which are attached to the property shall be deemed to be fixtures and shall become the property of Landlord upon termination of the lease, unless otherwise herein provided. Any alterations, additions or improvements shall be made by Tenant, at Tenant's sole cost and expense, and Landlord shall have no liability therefor. Any contractor or person selected by Tenant to make the same must first be approved in writing by the Landlord. Upon written demand by Landlord, given at least thirty (30) days prior to the expiration of the term hereof, Tenant shall, at Tenant's sole cost and expense, forthwith and with all due diligence (i) remove any alterations, additions, or improvement made by Tenant, designated by Landlord to be removed; and (ii) repair any damage to the Premises caused by such removal.

7. **MAINTENANCE AND REPAIRS**. By taking possession of the Premises, Tenant shall be deemed to have accepted the Premises as being in satisfactory order, condition, and repair. Tenant shall, at Tenant's sole cost and expense, keep the premises in good condition and repair, damage from causes beyond the reasonable control of Tenant and ordinary wear and tear excepted. Landlord shall maintain roof, water access to building, natural access to building.

8. **INSURANCE.**

(a) Tenant shall, during the term of this Lease, at its own cost and expense, maintain fire and Liability coverage insurance on the Tenants contents of the Premises.

Tenant shall, at all times during the term of this Lease, at its own cost and expense, maintain with good and responsible insurers authorized to do business in the State of Indiana public liability insurance covering the liability of both Tenant and Landlord in connection with the Premises with limits of not less than $1,000,000 for death or injury to one person, and combined single limit of $1,000,000 for bodily or property damage.

9. **UTILITIES AND TAXES**. Tenant shall pay monthly, as and when the same become due and payable, all charges for water, telephone, electricity, gas, heat, air conditioning, waste disposal, and other like and similar utility charges for services furnished to the premises whether by a third person, a governmental unit or a utility company. To the extent that any charge for any such service could or might be a lien on the Premises, Tenant shall at Landlord's request submit Landlord evidence of the full payment thereof.

10. **ENTRY BY LANDLORD**. Landlord reserves and shall have the right to enter the premises, to inspect the same, to supply any service to be provided by Landlord to Tenant hereunder, to show the premises to prospective purchasers or tenants, to post notices of nonresponsibility, and to alter, improve or repair the Premises that Landlord may deem necessary or desirable, all without reduction of rent. Landlord shall provide 24 hours notice of any entry requests to Tenant. Tenant shall make every effort to accommodate the Landlords efforts to show the property currently For Sale.

11. **DEFAULT**. The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant.

(a) The vacating or abandonment of the Premises by Tenant.

(b) The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of ten (10) days after written notice thereof by Landlord to Tenant.

(c) The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by the Tenant, where such failure shall continue for a period of ten (30) days after written notice thereof by Landlord to Tenant; provided, however, that if the nature of Tenant□'s default is such that more than ten (30) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commences such cure within said ten (30) day period and thereafter diligently prosecutes such cure to completion.

12. **REMEDIES IN DEFAULT.** No such default or breach shall relieve Tenant of Tenant's liabilities and obligations under this. In any such event Tenant shall pay Landlords the base and additional rent and all of other sums required to be paid by Tenant up to the time of such event

(a) Terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Tenant shall surrender possession of the Premises to Landlord. In such event, Landlord shall be entitled to recover from Tenant ail damages it may incur by reason of Tenant's default including, but not limited to, the cost of recovering possession of the property. Should any legal action become necessary following agreed upon proper notices than said prevailing party may request attorney fees from the courts.

13. **EMINENT DOMAIN.** If all or any part of the Premises is taken or condemned (both and either of which terms includes within their meaning a conveyance in lieu of condemnation upon the threat thereof) by competent authority for any public use or purpose, then Landlord shall have the option for (60) days following such taking to terminate this Lease if Landlord, in its sole discretion, deems repair or restoration commercially unfeasible or not in its best interest

14. If a part of the premises is taken or condemned and the remaining portions of the premises are unsuitable for the purposes of Tenant□'s original occupancy, then Tenant shall have the option for thirty (30) days allowing such taking to terminate this Lease. Any such termination is to be effective as of the date of the taking. In the event this Lease is not so terminated, then this Lease shall remain in full force and effect, but Landlord shall promptly restore the

Premises to a condition comparable to its condition immediately prior to such taking (less the portion lost in the taking). Rents payable hereunder shall be reduced during the period of restoration and after such taking in proportion to the reduction in the number of square feet of net rentable floor area of the Premises occasioned by such restoration and taking. Except as herein otherwise specifically provided, Landlord shall be entitled to all awards and proceeds payable by reason of such taking, whether whole or partial, as damages or otherwise. Tenant hereby expressly waives any right or claim to any part thereof and assigns to Landlord its interest therein, provided, however, that where such taking results in a termination of this Lease pursuant to this paragraph, then the Tenant shall be entitled to that portion, if any, of an award made to or for the benefit of Tenant specifically for the loss of Tenant's business, or depreciation to and cost of removal of trade fixtures exclusive of leasehold improvements, owned by Tenant which Tenant is entitled to remove. Tenant shall have not claim against Landlord, condemning authority or the award for the value of the unexpired term of this Lease.

(a) Notices. All notices and demands which may or are to be required or permitted to be given by either party to the other hereunder shall be in writing. All Notices and demands by the Landlord to the Tenant shall be sent by certified United States mail, postage prepaid, notices from the Tenant addressed to the Landlord at the place where rent is payable, or to such other person or place as the Landlord may from time to time designate in a notice to the Tenant.

(b) Quiet Possession. Upon Tenant paying the rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the entire term hereof, subject to all provisions of this Lease.

(c) Prior Agreements. This Lease contains all of the agreements of the parties hereto with respect to any in connection with the Lease of the Premises and Tenant's use of the Premises, and no prior agreements or understandings pertaining to any such matters shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest. This Lease shall not be effective or binding on any party until fully executed by both parties hereto.

(d) Attorney's Fees. In the event of any dispute, action or proceeding brought by either party against the other under this Lease, whether suit be brought or not, the prevailing party shall be entitled to recover all costs and expenses including the reasonable fees of its attorneys in such dispute, action or proceeding.

(e) Subordination and Attornment. Tenant hereby subordinates all of Tenant's right, title and interest under this Lease to the lien of any existing and all future mortgages and deeds of trust on the premises. Tenant agrees to execute and deliver promptly such agreements and other documents as Landlord may request from time to time to confirm and acknowledge the foregoing subordination agreement and Tenant hereby appoints Landlord as Tenant□'s agent to execute and deliver all such agreements and other documents for and on behalf of Tenant. In the event the lien of any such mortgage or deed of trust is foreclosed or title to the Premises is conveyed in lieu of foreclosure,

(f) Severability. Any provision of this Lease which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof and such other provision shall remain in full force and effect.

(g) Cumulative Remedies. No remedy or election hereunder shall be deemed exclusive but shall wherever possible, be cumulative with all other remedies at law or in equity.

(h) Choice of Law. This Lease shall be governed by the laws of the State of Indiana.

(i) Contemporaneous Agreements.

This Lease is executed contemporaneously with an addendum regarding the details of this lease agreement. Such addendum takes precedence over other terms incorporated in the Lease agreement when in conflict.

**15. MISCELLANEOUS.**

(a) Utilities. Tenant shall pay for all separately metered water/sewer and electrical service, including deposits if necessary.

(b) Indemnification:
The Landlord shall not be liable for any injury to the Tenant (s) or any other persons or property entering the Property. Or occurring within the Property during the Term of the Lease. Neither shall the Landlord be liable for any damage to the structure within which the Property is located or any part thereof. The tenant hereby agrees to hold the Landlord harmless from and indemnify the Landlord for all claims or damage not arising from the Landlords acts, omission, fault or negligence.

**IN WITNESS WHEREOF**, the parties hereto have executed this Lease as of the date above written. Signed, sealed, and delivered in the presence of:

______________________________

John Bricker

Print Name John Bricker (Tenant)

______________________________

Print Name Jim Epstein for Lakefront Associates, LLC. (Landlord)

______________________________

Print Name James Epstein (Landlord)

**The signing of this agreement acknowledges the Landlord's receipt of $3500.00 from the Tenant for:**

Full Rental Payment for the months of June 2023 thru October 2023.

Both the Landlord and the Tenant received a copy of this Agreement.

## Addendum

Parties agree that this lease is for a period of 12 months beginning June 1, 2023. Lease shall continue on a month to month period with a 60 day cancellation agreement for any reason by either party following June 1, 2024. If either party intends to terminate the Lease on June 1, 2024 than written notice shall be given to the other party by April, 1 2024.

Parties agree that tenant shall make every effort to assist Landlord in the sale of the property. For the initial 12 month period, Upon the sale of the property or accepted offer with customary deposit by buyer landlord shall have the right to terminate the lease with 60 days written notice. Upon said notice rental shall cease, on the date of said notice and any prepaid rental shall be returned to Tenant.

Landlord has no active potential buyers at the time of the lease signing.

Landlord shall give the property buyer the opportunity to continue the Lease with the Tenant. Tenant shall not be obligated to continue the Lease beyond the initial 12 month term with the new property buyer.

# *LEASE AGREEMENT*

## Addendum 2

**THIS LEASE,** dated June 1, 2023 , is made by and between. Lakefront Associates whose address is 3609 East U.S. Highway 12 "Landlord") and John Bricker whose address is P.O. Box 144 New Buffalo, Michigan 49117 (Referred as "Tenant").

That, for and in consideration of the rent to be paid by Tenant and the covenants and agreements to be performed by Landlord and Tenant, as hereinafter set forth, the parties mutually covenant and agree as follows:

A: Both parties agree to lease two additional sections of Building 1 under the same conditions as the original Lease Agreement dated June 1, 2023. Tenant shall pay an additional $400.00 per month starting with the first monthly rental payment due on the original lease and shall continue monthly while the original lease is active. Should the adjacent tenant vacate the balance of Building One Lessee shall have the option to lease said space for an additional $200.00 per month under the same conditions as the original lease.

B: All conditions of the initial Lease Agreement dated June 1, 2023 shall apply to this second Addendum agreement.

C: Tenant agrees to split monthly usage cost for Electric, usage for Building 1. Effective August 1,2023.

**IN WITNESS WHEREOF,** the parties hereto have executed this Lease Addendum as of the date written above. Signed, sealed, and delivered in the presence of:

John Bricker
Name John Bricker (Tenant)

Name James Epstein
Lakefront Associates, LLC. (Landlord)