UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CASE NO.
3:26-CV-1125-DRL-SJF

**John Bricker**
PLAINTIFF

*– v –*

**James M. Epstein, et al.**
DEFENDANTS

# MEMORANDUM SUPPORTING DISMISSAL

## INTRODUCTION

In 2023, John Bricker leased commercial space in Michigan City from Lakefront Associates, LLC. A year later, Lakefront ended the lease, sued for possession, and won. The LaPorte Superior Court held that the lease ended on June 1, 2024, and that Bricker had "no legal authority to occupy the property." An appellate panel affirmed, and Indiana's Supreme Court Bricker's transfer petition.

Bricker says he isn't challenging any of that. [DE 9 ¶¶ 10, 65.] He doesn't dispute that the lease ended; his own lease-based claims depend on it. [DE 9 ¶¶ 17, 58, 93.] But he now wants damages because the landlord acted on that result by retaking the second space he'd rented under the same agreement. He even faults Lakefront for not sending the certified-mail notices he argued for in state court, an argument the trial court rejected and the appeals court found beside the point. And he recasts ordinary lease disputes as fraud, outrage, intimidation, and crime. His seven counts seek compensatory, punitive, and treble damages from Lakefront and from its sole member, James Epstein.

Several of those counts fail as a matter of Indiana law, on the facts Bricker pleads

and the lease he says governs:

- Count I (ouster). Indiana courts have long recognized a landlord's right to retake possession peaceably without suing. They have treated a holdover's tort remedy against a landlord entitled to possession as limited to excess force. Bricker pleads no force at all.
- Count III (fraud and alter ego). It seeks the same damages as the contract claim in Count IV. And the lease Bricker signed lists Epstein individually as a landlord and says the property was "currently For Sale."
- Count V (outrage). It rests on lawful litigation and lease enforcement, and not on behavior civilized society finds intolerable.
- Count VI (interference). It depends on a crime, intimidation, that the alleged statements don't establish.
- Count VII (Crime Victims Relief Act). Its deception predicate cites a statute repealed in 2021, and its conversion predicate doesn't plead criminal intent.
- Count IV (in part). Its notice-and-cure claims relitigate how the lease ended, its quiet-possession claim fails for the same reason Count I does, and its buyer-continuation claim alleges no loss.

The Court should dismiss those claims. Defendants don't ask the Court to decide Count II, or Count IV's Sale Addendum and doorway claims [DE 9 ¶¶ 93–94, 95(d)], at this stage. They reserve all defenses to those claims.

## Issues

1. *Count I:* Indiana courts recognize a landlord's right to retake possession peaceably without suing, and they have limited a holdover's tort remedy to excess force. Bricker pleads that his lease and its addenda, including the one covering 208 Freyer Road, were "one integrated agreement." He doesn't dispute that it ended. And he pleads only that his landlord changed the locks, not forcibly removed him. Does Count I state a claim?

2. *Count III:* A fraud plaintiff who also sues for breach of contract must plead an injury distinct from the contract damages. Bricker's fraud damages (unreturned prepaid rent and relocation costs) are the contract damages he seeks in Count IV. Does Count III state a claim for fraud or "alter ego"?

3. *Count V:* Outrage requires conduct that goes beyond all possible bounds of decency. Bricker's list of "wrongs" is an eviction suit Lakefront won, a peaceable retaking, some letters, and a real-estate sale. Is that outrageous as a legal matter?

4. *Count VI:* Interference with business relationships requires illegal conduct. Bricker's only alleged illegality is intimidation, which requires a "threat" as the statute defines it. A landlord's statement that his own residential tenants' tenancies were in jeopardy if they kept working for Bricker isn't one. Does Count VI state a claim?

5. *Count VII:* The Crime Victims Relief Act requires a crime that causes a pecuniary loss. Bricker's deception predicate rests on a statute repealed in 2021 and doesn't allege loss. His conversion predicate describes a landlord who asked a court for permission before moving the goods. Does Count VII state a claim?

6. *Count IV (in part):* The state courts held that Lakefront ended the lease by notice, not for default. Bricker still claims Lakefront breached the lease's certified-mail and cure provisions, its quiet-possession covenant, which runs only "for the entire term," and a promise to let a buyer continue the lease. Do those claims survive when the lease ended without a default, its term was

over, and no buyer took title until months later?

## Background

The following facts come from the amended complaint, which must be accepted as true for this motion. They also come from the lease the complaint incorporates and from state-court records the Court may judicially notice.

### A. The lease and its two addenda

In May 2023, Bricker leased 210 Freyer Road in Michigan City from Lakefront for his used-equipment business. The lease took effect on June 1, 2023. [DE 9 ¶¶ 1, 12.][1]

The lease has two landlord signature lines. The first reads "Jim Epstein for Lakefront Associates, LLC." The second bears Epstein's handwritten name. [DE 9 ¶ 13; DE 9-1 at 8.] Record title stood in Epstein's name. [DE 9 ¶ 13.]

The First Addendum set a 12-month term beginning June 1, 2023. After that, the lease would "continue on a month to month period with a 60 day cancellation agreement for any reason by either party." [DE 9 ¶ 15; DE 9-1 at 9.] During the first 12 months, the addendum also gave the landlord a right to terminate on 60 days' notice "[u]pon the sale of the property or accepted offer with customary deposit by buyer." [DE 9 ¶ 16; DE 9-1 at 9.]

The Second Addendum added "two additional sections of Building 1," the building

---

[1] The amended complaint attaches the lease and both addenda as Exhibit A. [DE 9 ¶¶ 12, 14; DE 9-1.] Citations to DE 9-1 are to the page numbers in its ECF header.

Bricker calls 208 Freyer Road, "under the same conditions as the original Lease Agreement," for $400 more a month. [DE 9 ¶ 18; DE 9-1 at 10.] That rent "*shall continue monthly while the original lease is active*."[2] [DE 9-1 at 10, ¶ A (emphasis added).] Paragraph B adds that "[a]ll conditions of the initial Lease Agreement dated June 1, 2023 shall apply to this second Addendum agreement." [DE 9 ¶ 18.] Bricker pleads that the lease and both addenda "were executed as a single transaction and constitute one integrated agreement." [DE 9 ¶ 14.]

### B. The eviction

Lakefront sued for possession in the LaPorte Superior Court on April 24, 2024. [DE 9 ¶ 37.] Following a July 10, 2024 trial [Ex. 2 ¶ 13], the court entered an order within two weeks. It held that "[t]he lease ended as of June 1st, 2024," and that Bricker "has no legal authority to occupy the property." It ordered him to vacate 210 Freyer Road and remove his belongings by July 31, 2024. [DE 9 ¶¶ 44, 63; Ex. 1 ¶¶ 21–22.]

Bricker doesn't dispute that the lease ended. He calls May 31, 2024 "the precise termination date produced by the First Addendum." [DE 9 ¶ 17.] His Count IV claim rests on the lease's termination. [DE 9 ¶¶ 58, 93.] And he says possession was awarded on a "non-renewal theory." [DE 9 ¶ 63.] The appellate court affirmed, holding that "Lakefront was entitled to possession of the premises because it gave notice to Bricker by filing suit seeking termination of the lease agreement." *Bricker v. Epstein*, No. 24A-EV-1815, slip op. ¶ 19 (Ind. Ct. App. June 4, 2025)

---

[2] Bricker quotes paragraph A but omits the emphasized clause. [DE 9 ¶ 18.]

(mem.), trans. denied. [Ex. 2.]

Bricker made one more payment to Epstein in July 2024. He "transmitted [it] by Zelle to Epstein's personal account," and it "was accepted and deposited the same day." [DE 9 ¶ 30.] The state-court record shows when. On July 11, the day after the eviction trial, Bricker filed an "Affirmation of Payment" stating that he had paid the July rent "on July 10th or 11th, 2024." [Ex. 1 ¶ 15.] Judgment followed on July 22.

### C. Retaking 208 Freyer Road

On July 31 and August 1, 2024, Epstein changed the locks on 208 Freyer Road while Bricker was "mid-move," with inventory inside. [DE 9 ¶¶ 43, 45, 69.] Bricker doesn't allege any confrontation, threat, or force. On August 1, Lakefront asked the state court to "supplement its order to reach" 208. It also asked for leave to remove Bricker's property and store it at his expense. [DE 9 ¶¶ 45–46.] The state court later entered a stay. [DE 9 ¶¶ 57, 77.] On December 27, 2024, it ordered access to the property, which Bricker says Defendants limited to the 210 building. [DE 9 ¶ 54.] Epstein sold the property on January 21, 2025. [DE 9 ¶ 57.]

### D. The claims

Bricker sues Lakefront and Epstein, jointly and severally, on seven counts:

- wrongful exclusion, ouster, and trespass at 208 Freyer Road (Count I);
- conversion (Count II);
- fraud in the inducement and "alter ego" (Count III);
- breaching the lease (Count IV);
- intentional infliction of emotional distress (Count V);

- tortious interference (Count VI); and
- the Crime Victims Relief Act, Ind. Code § 34-24-3-1 (Count VII).

## Standard

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true and draws reasonable inferences for the plaintiff. But it doesn't accept legal conclusions or "[t]hreadbare recitals" of a claim's elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pro se complaint is construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, it must plead facts that state a claim under the governing law, which here is Indiana's. *Allen v. Cedar Real Estate Grp.,* LLP, 236 F.3d 374, 380 (7th Cir. 2001).

The Court may consider documents the complaint references that are central to the claims, like the lease here. Where such a document and the complaint conflict, the document controls. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Court may also take judicial notice of state-court records without converting a Rule 12 motion into one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Defendants offer the state-court records (Exs. 1–2) only to show what was filed and ordered, and when. They don't offer them for the truth of any disputed finding.

A plaintiff can plead himself out of court by alleging facts that defeat his claim. A complaint may also be dismissed on an affirmative defense that its own allegations establish. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014). Fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b).

Finally, Rule 12(b)(6) tests claims, not counts. The Court won't dismiss "parts of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). But where one count joins distinct claims, each resting on its own operative facts, each is tested separately. That's how Defendants address the separate predicates in Count VII and the separate breaches alleged in Count IV.

## Argument

### 1. Count I fails because Lakefront was entitled to possess 208 Freyer Road, and Bricker doesn't plead force.

Count I is a tort claim for "wrongful exclusion, ouster, and trespass." Its premise is that Epstein needed a court order reaching 208 Freyer Road before he could change the locks. [DE 9 ¶¶ 44, 65, 69, 71.] Indiana law says otherwise. Indiana courts have long recognized a landlord's right to retake possession peaceably, without suing, from one with no right to stay. And they have treated a holdover's tort remedy against a landlord entitled to possession as limited to excess force. Bricker's own allegations establish Lakefront's right to possession, and he pleads no force at all.

#### A. Bricker's right to occupy 208 ended with the lease.

Bricker's contractual claim to 208 arises "[b]y the Second Addendum." [DE 9 ¶ 67.] But he pleads that the lease and both addenda "constitute one integrated agreement." [DE 9 ¶ 14.] The Second Addendum leased the space "under the same conditions as the original Lease Agreement." It made "[a]ll conditions of the initial Lease Agreement" apply. And its rent was to "continue monthly while the original lease is active." [DE 9-1 at 10, ¶¶ A–B.] Bricker doesn't dispute that the agreement ended; his Count IV claim depends on it. [DE 9 ¶¶ 17, 58, 93.] So his right to the

208 space ended with it. Once a lease terminates, "[t]he relation of landlord and tenant is annulled." *Gigax v. Boone Vill. Ltd. P'ship*, 656 N.E.2d 854, 858 (Ind. Ct. App. 1995) (quoting 2 M. Friedman, *Friedman on Leases* § 16.3, at 987 (3d ed. 1990)). Bricker's other theories, the July payment and his continued possession, are addressed in Part 1.D.

The quiet-possession covenant Bricker cites [DE 9 ¶ 68] doesn't change that. It runs only "for the entire term hereof, subject to all provisions of this Lease." [DE 9-1 at 6, § 14(b).] The term ended. After that, Bricker held over without right. He was a tenant at sufferance, and no notice was needed to end his occupancy. Ind. Code § 32-31-1-8(4).

### B. Indiana doesn't require a landlord to sue before peaceably retaking its premises.

Indiana courts have long recognized a landlord's right to peaceably retake their premises. In *Calef v. Jesswein*, a tenant stopped operating a gravel pit but left his machinery behind. 93 Ind. App. 514, 516–17, 176 N.E. 632, 633 (1931), trans. denied. The landlords ended the tenancy and told him to remove the machinery or they would "hold the same for storage." *Id.* at 517. When he didn't, the landlords "without bringing suit for possession against the plaintiff, peaceably" re-took possession. *Id.* The tenant argued they had to go to court first. An appellate panel disagreed:

> It was not necessary, as appellant contends, in the light of the foregoing finding and other facts found by the court, that appellees resort to the courts, institute an action to recover possession of the leased premises and recover judgment to that effect, in order that possession be transferred from the appellant to appellees Jessweins.

*Id*. at 519, 176 N.E. at 634. A landlord "has no right by force to repossess his own real estate." But "[t]he law … has never denied the right of a landlord to take peaceable possession … from a defaulting tenant." *Id*.

*Calef* took its rule from two holdover cases. In *Hammond Savings & Trust Co. v. Boney*, a subtenant held over after the master lease expired. 61 Ind. App. 295, 297–99, 303, 107 N.E. 480, 481–83 (1915), trans. denied. The court explained that where an owner "is wrongfully held out of possession by one without right in the premises, he may, when the opportunity presents itself, gain a possession in fact peaceable and by peaceable means." *Id*. at 305, 107 N.E. at 483–84 (quoted in *Calef*, 93 Ind. App. at 519–20). "[T]he necessity for recourse to legal procedure would exist only where peaceable means fail and force would otherwise be necessary." *Id*. *Hammond* relied in turn on *Scott v. Willis*, where a tenant held over after his lease ended. 122 Ind. 1, 2, 22 N.E. 786, 786 (1889). The Indiana Supreme Court said there that the owner "may embrace the opportunity and gain peaceable possession if he can, but unless he can obtain possession without force or show of violence, his sole remedy is to invoke the aid of legal procedure." *Id*. at 2–3.

The appeals court has since described a commercial landlord's lock-change the same way, without criticism. In *Wee Scots, L.L.C. v. Fleming*, a commercial landlord changed the locks on a defaulting commercial tenant, with its equipment inside, before suing for possession. 765 N.E.2d 668, 669 (Ind. Ct. App. 2002). The court described that as the landlord exercising "her right under the lease in the event of a default to enter upon and repossess the leased premises." *Id*. at 672. And when the General Assembly barred landlord self-help, it did so only for residential tenants. It barred "[c]hanging the locks or adding a device to exclude the tenant from the

dwelling unit." Ind. Code § 32-31-5-6. It left commercial premises alone.

So the allegations Bricker relies on don't matter. He says no court order "reached 208 Freyer Road," the Sheriff declined to act there, and Lakefront asked the state court to supplement its order. [DE 9 ¶¶ 44–45, 69, 71.] None of that bears on whether Lakefront could retake its own building peaceably. A sheriff executes the writ as written. Asking a court for help isn't an admission that the law required it.

### C. In tort, a landlord entitled to possession is liable only for excess force, and a lock change isn't force.

Indiana courts have treated a holdover's tort remedy against a landlord entitled to possession as limited to excess force. As *Hammond* explained:

> [W]here the landlord is in fact entitled to possession, and he dispossesses the tenant under circumstances that give the tenant a remedy under the forcible entry and detainer statute, if the latter elects not to pursue such remedy, but rather sues in tort, as for the trespass, assault and battery, or the like, the landlord is liable in such form of action only for excess of force.

61 Ind. App. at 312, 107 N.E. at 486. The Indiana Supreme Court put it the same way: "The common law affords no civil remedy against a person who having a right enters forcibly …; but the injured party must appeal to the statutory action of forcible entry and detainer." *Scott*, 122 Ind. at 3, 22 N.E. at 786. Count I doesn't plead a statutory claim. It sounds only in tort, as a claim for "wrongful exclusion, ouster, and trespass."

Bricker doesn't claim Epstein used force, let alone excess force. In Indiana, "[a] forcible entry or a forcible holding means more than a mere trespass. The force must be actual." *Hammond*, 61 Ind. App. at 305, 107 N.E. at 484. Possession must

be "taken or kept either by actual violence, or by such a show of force as was reasonably calculated to intimidate." *Id*. In *Hammond*, the owner entered by forcing boards off a trapdoor while the occupant was away. The court held that entry was "no more than a mere trespass." Otherwise "the unlocking of a door, or the mere turning of a latch" would be forcible. *Id*. at 306, 107 N.E. at 484. To be forcible, an act "must be such as does, or that reasonably may be expected to act on the person, or it must be so tumultuous in its nature as to constitute, or to have a tendency to a breach of the peace." *Id*.

Yet the occupant prevailed in *Hammond* for what *followed* the entry. The owner barricaded the doors and posted a guard, who "forcibly pushed [the occupant] away from the door" when he returned. *Id*. at 301, 309, 107 N.E. at 482, 485. The court treated the entry and that forcible exclusion as one transaction. *Id*. at 307–09, 107 N.E. at 484–85. It also described the other path. Where an owner enters in the occupant's absence, bars the doors, and refuses him entrance on his return, and the occupant "expressly or impliedly acquiesces," the owner's possession "would ripen into such a lawful and peaceable one as could rightfully be defended." *Id*. at 307–08, 107 N.E. at 484. Barring the doors isn't force. Physically expelling a returning occupant is.

Nothing like that is alleged here. Bricker alleges only that Epstein "changed the locks." [DE 9 ¶¶ 45, 69.] He describes the retaking in detail: the loaded trailers, the Sheriff's visit, and the motions Lakefront filed that day. [DE 9 ¶¶ 43–46, 69–71.] But he alleges no violence, threat, confrontation, or attempt to re-enter that was met with force. He pursued his remedies in the state court. [DE 9 ¶¶ 54, 57.]

### D. The July payment didn't create a new tenancy.

Bricker alleges that Epstein "demanded and accepted rent for that space … including for July 2024." [DE 9 ¶ 67; see id. ¶ 30.] Taking that as true, it didn't revive the Second Addendum or create a new tenancy. A holdover's payments continue a tenancy only when "the lessor does not treat the tenant as a trespasser by evicting him…." *Houston v. Booher*, 647 N.E.2d 16, 19 (Ind. Ct. App. 1995). Lakefront was evicting him. It sued on April 24, 2024 and won on July 22. [DE 9 ¶¶ 37, 44, 63.] Bricker made the payment right after the eviction trial, while the case was under advisement. [Ex. 1 ¶ 15.] Eleven or twelve days later, the court held that the lease had ended and that he had no right to occupy. [Ex. 1 ¶ 21.] A payment made during a landlord's eviction case can't plausibly show the landlord's consent to a new tenancy.

And Bricker's theory leads to an absurd result. His monthly rent covered the whole leased premises, both buildings. [DE 9 ¶¶ 18, 22, 36.] If accepting the July payment had created a new tenancy, it would have created one in 210 as well. Yet Bricker accepts the judgment that ordered him out of 210 by July 31. He says he doesn't seek review of it. [DE 9 ¶¶ 10, 65.] His July-payment theory can't be squared with that judgment. And even on his own telling, the payment covered July. The locks changed on July 31 and August 1, as that month ended and as the state court's deadline to vacate passed.

Nor does Bricker's alternative allegation help. He says he was in "actual, open, and lawful possession … with Epstein's knowledge and acquiescence." [DE 9 ¶ 67.] A landlord suing to evict a tenant doesn't acquiesce in the latter staying. Whether possession was "lawful" is a legal conclusion, which the Court needn't

accept. *Iqbal*, 556 U.S. at 678.

E. The result is the same for Epstein.

Bricker sues Epstein individually because Epstein "personally changed the locks." [DE 9 ¶ 70.] But LLC members are liable only for their own torts. Ind. Code § 23-18-3-3(a). Retaking possession for a landlord entitled to possession, without force, isn't a tort. The Court should dismiss Count I against both Defendants.

## 2. Count III fails because it seeks only contract damages, and the lease disclosed what Bricker says was hidden.

Count III claims Epstein fraudulently induced the lease. Supposedly he named the LLC as lessor, concealed that he held title, and didn't disclose a real-estate listing. [DE 9 ¶¶ 83–88.] The count fails for three reasons.

A. Bricker pleads no injury distinct from his contract damages.

A plaintiff claiming breach of contract *and* fraud must prove that the breaching party committed the separate and independent tort of fraud and that the fraud resulted in an injury distinct from that resulting from the breach. *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004), trans. denied. The plaintiff there failed because his fraud claim just "repackaged" his contract-breach claim. *Id*. Tort law doesn't let a party turn a contract dispute into a tort to enlarge the damages. *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173–75 (Ind. 2003); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012), trans. denied.

Bricker's fraud damages are his contract damages. He says he "paid rent in advance that was never returned." He says he "was denied the protections a properly con-

stituted landlord-tenant relationship would have afforded." And he says he "incurred relocation costs exceeding $22,000." [DE 9 ¶ 90.] The prepaid rent is what Count IV seeks under the Sale Addendum. [DE 9 ¶¶ 94, 97 & Prayer ¶ A.] The "protections" are contained in the lease. Bricker himself ties the relocation costs to the First Addendum's notice and refund terms. [DE 9 ¶ 23.] He alleges no harm from the lessor's identity. He got the possession he bargained for, both buildings, for the full term and beyond. That's a contract claim, and Count IV already asserts it.

### B. The lease disclosed both things Bricker says were hidden.

Bricker's theory is that naming the LLC as lessor concealed that Epstein was "the true owner." [DE 9 ¶¶ 83–85, 88.] But Bricker pleads the opposite. The lease has a second "(Landlord)" signature line bearing "JAMES EPSTEIN" individually. In Bricker's words, "[t]he Lease thus carries two Landlord signature lines, one in a stated representative capacity and one in an individual name." [DE 9 ¶ 13; DE 9-1 at 8.] A document that names Epstein individually as a landlord *didn't conceal his personal role*. And Bricker couldn't reasonably rely on an implication the document itself contradicted.

Fraud requires reliance (and not just blind reliance) on a material misrepresentation. *Tobin,* 819 N.E.2d at 86. Naming a lessor identifies who grants possession, not who holds title. The title Bricker says was hidden was a public record. *Cf. Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind. 1989) (purchaser charged with constructive notice of real-property records).

The listing theory [DE 9 ¶ 86] fails on the lease's language. Section 10 required

Bricker to "make every effort to accommodate the Landlords efforts to show the property currently For Sale." [DE 9-1 at 4, § 10.] The First Addendum required him to "make every effort to assist Landlord in the sale of the property." It also gave the landlord a sale-based right to terminate. [DE 9-1 at 9; DE 9 ¶ 16.] *A lease that tells the tenant the property is "currently For Sale" didn't conceal that it was "For Sale."* Bricker can't plead reasonable reliance on a nondisclosure that the document he signed contradicts. With that disclosure in the lease, his "[o]n information and belief" allegation about when the property was listed [DE 9 ¶ 24] adds nothing.

### C. "Alter ego" isn't a freestanding claim.

Count III also seeks a declaration that the LLC is Epstein's alter ego. [DE 9 ¶ 89 & Prayer ¶ D.] Piercing the veil is a way to impose an entity's liability on its owner for some underlying claim. It isn't a cause of action by itself; it's an equitable remedy to protect a party from fraud or injustice. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). And Bricker already sues Epstein individually on every count. The Court should dismiss Count III.

## 3. Count V fails because the conduct alleged isn't outrageous as a legal matter.

Intentional infliction of emotional distress requires "extreme and outrageous conduct" that "intentionally or recklessly causes severe emotional distress." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether alleged conduct meets that

standard may be decided as a legal matter. *Ledbetter v. Ross*, 725 N.E.2d 120, 124 (Ind. Ct. App. 2000) (affirming dismissal); *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001).

Bricker's list [DE 9 ¶ 101] describes a landlord-tenant dispute, not atrocious conduct beyond all bounds tolerated by a civil community:

- *The eviction suit*. Lakefront won it, and the appeals court affirmed. Statements made in judicial proceedings are absolutely privileged. *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008). Bricker complains that the court didn't find nonpayment proven. But a suit that wins possession on another ground isn't outrageous.
- *Retaking 208 "mid-move."* That was a lawful, peaceable retaking (Part 1). On the same day, Lakefront asked the state court for leave to remove and store Bricker's property. [DE 9 ¶ 46.]
- *The "give away" and "dump" remarks*. Epstein wrote that the goods were "fine and secured until the courts allows me to take them to the dump." [DE 9 ¶ 51.] That's a landlord saying he would wait for the court. Bricker doesn't allege that anything was given away *or* dumped.
- *The interior doorway*. That's a dispute about the lease's entry clause, which Bricker also pleads as a contract breach. [DE 9 ¶¶ 49, 95(d).]
- *Statements to Epstein's own residential tenants*. These are landlord-tenant communications (Part 4). Bricker doesn't have a claim for what Epstein may or mayn't've said to his own residential tenants.
- *Selling the property*. Bricker says the sale came while a stay order was in effect, with his goods inside. [DE 9 ¶ 101.] Whether the sale squared with the stay is a question for the court that entered it. But selling one's own real estate isn't "atrocious" conduct.

Taken together, these allegations describe a hard-fought dispute over possession and property, conducted largely through the courts. And the claimed harm is mostly economic: "the destruction of a business." [DE 9 ¶ 103.] Nothing alleged

comes close to the "atrocious" conduct Indiana requires. The Court should dismiss Count V.

#### 4. Count VI fails because a landlord's statement about his own tenancies isn't intimidation.

Count VI alleges that Epstein told a few residential tenants, who also worked for Bricker, "that their tenancies were in jeopardy if they continued." [DE 9 ¶ 106.] Bricker pleads that the interference was "accomplished by independently illegal means": the crime of intimidation. [DE 9 ¶ 107.] He must plead that. Interference with a business relationship requires illegal conduct. *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Intimidation requires a "threat," and the statute defines that word. Ind. Code § 35-45-2-1(c). Examples are an intention to "unlawfully injure the person threatened or another person, or damage property," to "commit a crime," or to "falsely harm the credit or business reputation of a person." *Id.* § 35-45-2-1(c)(1), (3), (7). A landlord's statement that his tenants' tenancies were in jeopardy if they kept working for Bricker fits none of them. It expresses no intention to injure anyone unlawfully, damage property, or commit a crime. Ending a residential tenancy on proper notice is lawful. Bricker says Epstein "possessed no lawful authority to condition a residential tenant's continued occupancy upon that tenant's choice of employer." [DE 9 ¶ 107.] That's a legal conclusion, and he cites no law forbidding it. Without intimidation, there's no illegal conduct, and the business-relationship claim fails.

To the extent Count VI reaches "existing employment" relationships [DE 9 ¶ 105], it fares no better. Interference with a contract requires a valid contract, "intentional

inducement of breach of the contract," and "the absence of justification." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). Bricker identifies no contract and alleges no breach. He alleges only that "[a]t least one worker ceased working for Plaintiff." [DE 9 ¶ 55.] His own allegations also supply the justification. The workers lived in Epstein's apartment directly adjoining the 208 space. [DE 9 ¶¶ 20, 35.] And Bricker ties the statements to his move from the premises [DE 9 ¶ 108], when he was holding over after the lease ended (Part 1.A). The "overriding question" is whether the defendant's conduct was "fair and reasonable under the circumstances." *Winkler*, 638 N.E.2d at 1235. A landlord speaking to his own tenants about their own tenancies meets that test. The Court should dismiss Count VI.

### 5. Count VII fails because neither predicate pleads a crime that caused Bricker a pecuniary loss.

The Crime Victims Relief Act lets a person who "suffers a pecuniary loss as a result of" certain crimes recover up to three times his actual damages. Ind. Code § 34-24-3-1. The plaintiff must prove every element in the underlying crime. *Harper v. S&H Leasing, LLC*, 277 N.E.3d 87, 93 (Ind. 2026). The Act covers "only criminal conduct, not ordinary civil disputes." *Id.* at 96. The Supreme Court has warned that treble damages "create a strong incentive for plaintiffs to shoehorn a garden-variety civil dispute into a criminal offense." *Id.*

Count VII rests on two separate sets of facts. One is the alleged conversion and inventory theft. [DE 9 ¶ 111.] The other is alleged deception through storage-fee notices [DE 9 ¶ 112.] Each is a distinct claim, and neither is well pleaded.

### A. The deception claim rests on a repealed statute and doesn't allege a loss.

Paragraph 112 alleges "deception within the meaning of Indiana Code § 35-43-5-3." That statute was repealed in 2021. P.L. 174-2021, § 45. The notices Bricker describes began with a May 31, 2024 letter, three years later. [DE 9 ¶ 39.] Conduct can't violate a statute that no longer exists.

Re-labeling wouldn't help. The Act requires a pecuniary loss "as a result of" the offense. Ind. Code § 34-24-3-1. Bricker doesn't allege he paid any storage charge, or that he did or gave up anything because of the notices. His point is that the charges had no basis. [DE 9 ¶¶ 39, 112.] A demand that's refused causes no loss. And a landlord's demand for holdover or storage charges under a disputed lease is a civil dispute, not a crime. *Harper*, 277 N.E.3d at 96–97; *JPMCC*, 977 N.E.2d at 364–65. Citing the wrong statute in a letter [DE 9 ¶ 112(c)] isn't a crime either.

### B. The conversion claim doesn't plead criminal intent.

Criminal conversion requires that a person "knowingly or intentionally exert[] unauthorized control over property of another person." Ind. Code § 35-43-4-3(a). Theft adds an "intent to deprive the other person of any part of its value or use." Id. § 35-43-4-2(a). Mens rea is "the limiting principle" that separates crime from civil dispute. *Harper*, 277 N.E.3d at 96. "[G]ood faith is a defense," and "[g]enerally, this mens rea requirement will serve as a bar to finding criminal conversion in ordinary breaches of contract." *Id.* at 97. A seller that "believed it was entitled to retain" disputed funds lacked criminal intent. *Id.* (quoting *Catellier v. Depco, Inc.*, 696 N.E.2d 75, 78 (Ind. Ct. App. 1998)). "[O]ur General Assembly did not intend to criminalize bona fide contract disputes." *Harper,* 277 N.E.3d at 96.

Bricker's allegations describe a landlord acting under a claim of right and asking a court for authority:

- The state court had just held that Bricker had no right to occupy the property. [Ex. 1 ¶ 21.]
- Weeks before the lockout, Epstein told Bricker, "we have no interest in your equipment." [DE 9 ¶ 51.]
- The same day Epstein changed the locks, Lakefront asked the state court for "leave to remove Plaintiff's property and store it." Bricker says that request shows Epstein knew he "lacked authority to remove Plaintiff's property unilaterally." [DE 9 ¶ 46.] That's the point. *A person who asks a court for permission before moving another's goods isn't knowingly taking them.*
- About two months later, Epstein wrote that the goods were "secured until the courts allows me" to discard them. [DE 9 ¶ 51.]
- The state court then entered a stay, and in December 2024 it ordered access. [DE 9 ¶¶ 54, 57.]

The claim that Epstein "knowingly facilitat[ed]" removal by third parties [DE 9 ¶ 111] rests on doors left unsecured. [DE 9 ¶ 50.] Bricker himself pleads that as a breach of "a duty of reasonable care." [DE 9 ¶ 80.] Negligence isn't criminal intent. Nor is the January 2025 building sale with the goods still inside. [DE 9 ¶¶ 75, 77.] A deed conveys land, not a tenant's chattels, and Bricker doesn't allege that Epstein claimed to own his goods or that he purported to sell them. What remains is the bare label "knowingly or intentionally." [DE 9 ¶ 111.] Rule 9(b) lets intent be alleged generally, but "generally" isn't a license for conclusory pleading. *Iqbal*, 556 U.S. at 686–87. Bricker's claim for the value of his goods is a civil claim, and Count II asserts it. Count VII should be dismissed.

### 6. Count IV's notice-and-cure, quiet-possession, and buyer-continuation claims fail.

Count IV alleges several distinct breaches, each resting on its own facts. [DE 9 ¶¶ 93–95.] Four fail as a legal matter. Defendants don't ask the Court to decide the Sale Addendum and doorway claims [DE 9 ¶¶ 93–94, 95(d)] at this stage.

#### A. The notice-and-cure claims relitigate how the lease ended.

Bricker says Lakefront breached the lease by "failing to send any notice by certified United States mail as § 14(a) required." He also says it failed "to afford the ten-day cure period § 11(b) required before a monetary default could mature." [DE 9 ¶ 95(a)–(b).] He insists he isn't challenging the state judgments. [DE 9 ¶¶ 10, 65.] But these claims do just that.

Bricker's theory is that § 14(a) governed "every notice and demand by the Landlord," including the notice that ended the lease, and that "[n]othing short of certified United States mail satisfied it." [DE 9 ¶ 33.] He made the same argument in state court and lost. The trial court held that the addendum "does not say certified mail or registered mail. It says written notice shall be given." [Ex. 1 ¶ 16.] On appeal, Bricker argued again that ending the lease required certified mail. [Ex. 2 ¶ 17.] The appellate court affirmed on a ground that made the point irrelevant: the lawsuit's filing "served as notice to Bricker that Lakefront was ending the lease agreement," and "[m]ore than sixty-days passed between the [complaint's filing] and the court's order." [Ex. 2 ¶ 19.] Bricker now pleads the opposite. He says the filing "was not written notice sent by certified United States mail" and "did not afford sixty days." [DE 9 ¶ 58.]

Even apart from that, the claims allege no injury. The cure period governs when a tenant's nonpayment becomes a "default." [DE 9-1 at 5, § 11(b).] But Lakefront didn't end the lease for default. Bricker himself pleads that possession was awarded "on a non-renewal theory, not on the nonpayment allegation." [DE 9 ¶ 63.] A cure period for a default no one enforced cost him nothing. And a breach claim requires damages caused by the breach. *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012).

What's left isn't a claim at all. It's a defense to Lakefront's claim for unpaid rent, utilities, and attorney fees, which is still pending in state court. [DE 9 ¶ 64.] Whether Lakefront can recover despite the lease's notice and cure provisions is a question for that court. The lease, for example, ties attorney fees to legal action "following agreed upon proper notices." [DE 9-1 at 5, § 12(a).] Bricker says he "does not ask this Court to determine any question pending there." [DE 9 ¶ 64.] He should be held to that.

Finally, to the extent these claims seek damages for losing possession on the theory that the notice ending the lease was defective, the Court lacks jurisdiction over them. Federal district courts can't hear "cases brought by state-court losers comp-laining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The bar applies when the state-court judgment itself caused the injury. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc). Bricker lost possession of 210 Freyer Road because the state court ordered it. [Ex. 1 ¶ 22.] Damages for that loss would require this Court to hold that the state

courts got it wrong. Fed. R. Civ. P. 12(h)(3).

### B. The quiet-possession claim fails for the same reason as Count I.

The quiet-possession claim repeats Count I in contract form. Bricker says the retaking of 208 breached the quiet-possession covenant in § 14(b). [DE 9 ¶ 95(c).] That covenant runs only "for the entire term hereof, subject to all provisions of this Lease." [DE 9-1 at 6, § 14(b).] The 208 space was leased "under the same conditions as the original Lease Agreement," as part of "one integrated agreement." [DE 9-1 at 10, ¶¶ A–B; DE 9 ¶ 14.] That agreement had ended before the locks were changed (Part 1.A). A covenant for the term can't be breached *after the term ends*.

### C. The buyer-continuation claim alleges no loss.

The First Addendum says the "Landlord shall give the property buyer the opportunity to continue the Lease with the Tenant." It adds that the "Tenant shall not be obligated to continue the Lease beyond the initial 12 month term with the new property buyer." [DE 9-1 at 9.] Bricker says Lakefront broke that promise. [DE 9 ¶ 95(e).] But a buyer can continue only a lease that still exists. This one ended in 2024. [DE 9 ¶¶ 17, 58, 93.] The contract buyer Bricker describes never closed. [DE 9 ¶¶ 40–41.] The property sold to a different buyer on January 21, 2025, almost eight months after the lease ended. [DE 9 ¶¶ 41, 57.] By then there was nothing to continue. Nor does Bricker allege that any buyer wanted him as a tenant, or that he lost anything because no buyer was asked. A breach claim needs damages caused by the breach. *Haegert*, 977 N.E.2d at 937. This one has none.

The Court should dismiss the claims in ¶ 95(a), (b), (c), and (e).

## Conclusion

Bricker doesn't dispute that his lease ended, the result Indiana's courts reached and affirmed. What remains of these claims seeks tort, fraud, and treble damages for a landlord's peaceable enforcement of that result, and for ordinary lease disputes. The Court should dismiss:

- Counts I, III, V, VI, and VII; and
- the notice-and-cure, quiet-possession, and buyer-continuation claims in Count IV [DE 9 ¶ 95(a)–(c), (e).]

Date: October 12, 2026

*/s/ J. Thomas Vetne*
J. Thomas Vetne | 19606-64

Chester Law Office
230 N. Main St., Suite 2
Elkhart, IN 46516
(574) 296-1515
(574) 295-9316 - fax
tom@chesterlawoffice.com

## Certificate of Service

I certify that on October 12, 2026, I served this paper on Plaintiff at P.O. Box 144, New Buffalo, MI 49117, via U.S. mail, correct postage prepaid.

*/s/ J. Thomas Vetne*
J. Thomas Vetne | 19606-64