# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.

IN THE

# Court of Appeals of Indiana

FILED
Jun 04 2025, 8:44 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

John Bricker,

*Appellant-Defendant,*

v.

James Epstein d/b/a Lakefront Associates, LLC,

*Appellee-Plaintiff.*

---

June 4, 2025

Court of Appeals Case No.
24A-EV-1815

Appeal from the
LaPorte Superior Court

The Honorable
Greta Stirling Friedman, Judge

Trial Court Cause No.
46D02-2404-EV-564

**Memorandum Decision by Senior Judge Crone**
Judges Bailey and Foley concur.

**Crone, Senior Judge.**

## Statement of the Case

[1] John Bricker (Bricker) appeals the judgment of the small claims court in favor of James Epstein (Epstein) d/b/a Lakefront Associates, LLC (Lakefront) in an action for unpaid rent, eviction, and damages. We affirm and remand for a hearing on damages.

## Facts and Procedural History

[2] Epstein owns property in Michigan City and is the president and sole member of Lakefront. Bricker operates a business that purchases and resells used restaurant equipment.

[3] Bricker signed a commercial lease agreement with Lakefront on June 1, 2023, with the term of the lease "continuing until June 1, 2024 thereafter month to month until terminated or revised pursuant to the rental agreement." Appellant's App. Vol. 2, p. 22. Per the terms of the agreement, Bricker prepaid $3,500.00 for the period of June 1, 2023 until November 1, 2023. Thereafter, the payment was $700.00 per month. The lease agreement contained a notice provision, which provided as follows:

> All notices and demands which may or are to be required or permitted to be given by either party to the other hereunder shall be in writing. All Notices and demands by the Landlord to the Tenant shall be sent by certified United States mail, postage prepaid, notices from the Tenant addressed to the Landlord at the place where rent is payable, or to such other person or place as the Landlord may from time to time designate in a notice to the Tenant.

*Id.* at 26.

[4] The parties entered into two addenda contemporaneously with the execution of the lease agreement. In the first addendum, the parties agreed in pertinent part that,

> this lease is for a period of 12 months beginning June 1, 2023. Lease shall continue on a month to month period with 60 day cancellation agreement for any reason by either party following June 1, 2024. If either party intends to terminate the Lease on June 1, 2024 than [sic] written notice shall be given to the other party by April 1, 2024.

*Id.* at 29. Because Lakefront was trying to sell the property, the first addendum also contained a clawback provision, which provided that,

> For the initial 12 month period, [u]pon the sale of the property or accepted offer with customary deposit by buyer landlord shall have the right to terminate the lease with 60 days written notice. Upon said notice rental [sic] shall cease, on the date of said notice and any prepaid rental [sic] shall be returned to Tenant.

*Id.*

[5] The second addendum provided, in pertinent part,

> Both parties agree to lease two additional sections of Building 1 under the same conditions as the original Lease Agreement dated June 1, 2023. Tenant shall pay an additional $400.00 per month starting with the first monthly rental payment due on the original lease and shall continue monthly while the original lease is active.

*Id.* at 30.

[6] And the lease agreement contained provisions defining events of breach or default. Nonpayment of rent was not defined as an automatic breach, but an event that with notice could be cured within ten days. *Id.* at 25. Thereafter, if there was no cure, nonpayment of rent converted into a default or breach of the lease agreement. *Id.*

[7] After the first five months, Bricker made his November and December 2023, and January and February 2024 payments to Lakefront or Epstein. The parties disagree about the effect of missed payments and efforts made thereafter to cure nonpayment. Nevertheless, Epstein sent text messages to Bricker, the first of which sent on March 9 read, "still no rent check[,]" followed the next day by one which read, "are you not getting my messages[.]" Ex. Vol. 3, p. 24 (Plaintiff's Ex. 4). Bricker responded, "I only got one message[.]" *Id.* Epstein inquired again, "no rent check this month?" *Id.* Epstein testified that Bricker responded that he had already sent the money to him.

[8] The parties presented differing accounts to support their arguments about the subsequent payments. Nevertheless, Bricker admitted at the July 10 hearing that he had not paid rent for July 2024. But he filed an Affirmation of Payment on July 11, 2024, stating that he had paid the rent on July 10 or 11.

[9] As for notice to quit, Epstein emailed Bricker on March 28 that he was memorializing a March 15 conversation notifying him that he must vacate the leased premises. On April 17, the county sheriff delivered to Bricker a copy of a Notice to Quit dated April 10, demanding that Bricker turn over the premises to Lakefront within ten days of receipt unless Bricker cured the nonpayment of rent.

[10] At the hearing in this matter, Bricker introduced a letter addressing the Notice to Quit in which he claimed to have included a cashier's check "to cover whatever claim" Epstein believed he had. Appellant's App. Vol. 2, p. 44. Bricker attached to his response to Lakefront's motion for summary judgment a copy of a cashier's check dated April 16, 2024 in the amount of $2,200 made payable to the order of Lakefront. *Id.* at 61. However, that exhibit was not admitted at the hearing. Epstein testified that although he received the mailing, there was no check inside the envelope.

[11] On April 24, 2024, Lakefront's attorney sent a letter by certified mail to Bricker notifying him that the lease was scheduled to terminate on May 31, 2024 and that he should make arrangements to remove his personal property. Also, on April 24, 2024, Lakefront filed a Notice of Claim against Bricker alleging the

nonpayment of rent for March and April 2024, and seeking a judgment for $2,200 and an order of possession. Bricker filed an answer and affirmative defenses on May 16, 2024, contending that all rent had been paid and that he was not given notice of such nonpayment as required by the terms of the lease agreement. He also claimed that he attempted to cure the alleged breach of the lease for nonpayment. On May 31, 2024, Lakefront's attorney sent a letter by certified mail reiterating that the lease was to conclude that day, notifying Bricker to remove his personal property, and that if Bricker was unable to do so, a $10,000.00 monthly fee would be charged for the unauthorized storage of his property on the premises beginning June 1, 2024. Bricker did not move out of the leased premises at that time.

[12] On June 10, 2024, Lakefront filed a motion for summary judgment. Bricker filed a counterclaim against Lakefront asserting damages from Epstein's alleged wrongful eviction and failure to follow the terms of the lease agreement. Next, Bricker filed a motion to dismiss Lakefront's claim based on its failure to provide notice of the alleged nonpayment of rent in the manner required by the lease agreement, Lakefront's failure to allow Bricker to cure any nonpayment, Epstein's use of improper eviction proceedings to circumvent lease provisions in the event he found a buyer, and the failure to state an actionable claim for breach of the lease.

[13] The court held a hearing on July 10, 2024 during which it heard the parties' claims and received evidence. At the hearing, Bricker explained his justification for initially failing to pay rent then partially curing his nonpayment. His belief

was that the clawback provision in the lease agreement meant that when Lakefront received an offer to purchase the leased premises, Lakefront had to return or "pay the claw back money, the money for rent" to Bricker. Tr. Vol. 2, p. 12. His belief was that Lakefront had secured a buyer, that Lakefront could not afford to return all of the rent (purportedly owed him under the clawback provision), therefore his rent payment was forgiven. Bricker admitted he did not pay the March and April rent in a timely manner based on this belief. And although Lakefront's claim sought eviction based on nonpayment of rent, the court also heard evidence on the issues of improper notice and the hold over without objection.

[14] The court's July 22, 2024 order ultimately found in pertinent part that, notwithstanding previous attempts at notifying Bricker, Lakefront no longer wished to extend the lease agreement, there were notices the court found to be adequate to terminate the lease on June 1, 2024, and that nevertheless "the filing of the lawsuit serves as written notice that [Lakefront] wished to end the lease agreement between the parties." Appellant's App. Vol. 2, p. 18. The court then found that Bricker had no legal authority to occupy the leased premises and granted Lakefront's request for an order of possession. To that end, the court ordered Bricker to vacate the premises by July 31, 2024 and set the matter for a damages hearing. This appeal ensued.

## Discussion and Decision

[15] Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). We will not set aside the factual findings or judgment entered in a bench trial unless clearly erroneous. Ind. Trial Rule 52(A); *Trinity Homes*, 848 N.E.2d 1065, 1067 (Ind. 2006). In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine witness credibility. *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995). We consider only the evidence supporting the judgment and the reasonable inferences drawn from that evidence. *Id.* This "deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" *Id.* (quoting S.C.R. 8(A)). We review questions of law de novo, just as we do in appeals from a court of general jurisdiction. *Trinity Homes*, 848 N.E.2d at 1068.

[16] However, we note that Lakefront has not filed an appellate brief. When an appellee has not filed a brief, "we need not undertake the burden of developing an argument on the appellee's behalf." *Trinity Homes, LLC v. Fang,* 848 N.E.2d at 1068. "[W]e will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* Prima facie error is error "at first sight, on first appearance, or on the face of it." *Id.* (citation omitted). If an appellant is unable to meet this burden, we will affirm. *Id.*

[17] Bricker seeks reversal of the court's judgment, arguing that the court erroneously construed the First Addendum to mean that notice to end the lease agreement by June 1, 2024 did not require notice by certified mail. He further argues that the court erroneously concluded that Lakefront cured the failure to send notice to end the lease agreement on June 1, 2024 by sending notice by certified mail after April 1, 2024. And he contends that the court erred by concluding that the Small Claims Court Rules prohibited the court from considering his motion to dismiss.

[18] We need not address those issues to sustain the court's judgment, however, because the order provided alternative bases for the ruling. The court found, "That even if the previous written notices were not sent and received, the filing of the lawsuit serves as written notice that the Plaintiff wished to end the lease agreement between the parties." Appellant's App. Vol. 2, p. 18. The First Addendum provided that after June 1, 2024, the lease shall continue on a month-to-month basis with a sixty-day cancellation agreement for any reason by either party.

[19] The small claims action was filed on April 24, 2024 and the court's order was issued on July 22, 2024. We agree with the court's conclusion that the filing of the lawsuit served as notice to Bricker that Lakefront was ending the lease agreement because Lakefront could terminate the lease agreement with notice for any reason. More than sixty-days passed between the filing of the complaint and the court's order. Consequently, the court was correct when it found that

Lakefront was entitled to possession of the premises because it gave notice to Bricker by filing suit seeking termination of the lease agreement.

[20] The matter is therefore remanded to the trial court for a hearing on damages.

## Conclusion

[21] Based on the foregoing, we conclude that Bricker has failed to establish by prima facie evidence that the trial court erred by entering its order of eviction.

[22] Affirmed and remanded.

Bailey, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Michael C. Cooley
Corwin S. Marcum
Allen Wellman Harvey Keyes Cooley, LLP
Greenfield, Indiana